CAUSE NO. _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **MICHELLE L. GARCIA,** | § | Civil Action No.: |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | |
| | § | **COMPLAINT AND JURY TRIAL** |
| | | **DEMANDED** |
| **CITY OF GALVESTON, TEXAS, a** | § | |
| **municipal corporation, JAMES** | § | |
| **STEWART, individually, and, DOUG** | § | |
| **BALLI, in his Official Capacity as Chief of** | § | |
| **Police of Galveston, Texas** | § | |
| *Defendants.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff Michelle L. Garcia, (hereinafter referred to as "Ms. Garcia" or Plaintiff) and complains of Defendants City of Galveston, Texas (hereinafter referred to as "The City") James Stewart, individually (hereinafter referred to as "Stewart") and Doug Balli,   in his Official Capacity as Chief of Police of Galveston, Texas (hereinafter referred to as "Chief Balli"), and for cause of action would respectfully show the Court the following:

**I.
INTRODUCTION**

1. This is a civil-rights action arising from Defendant James Stewart's repeated unauthorized access, use, and non-investigative misuse of Plaintiff Michelle Garcia's private personal information through law enforcement databases and systems, including systems available to him by virtue of his employment with Galveston Police Department, while acting under color of state law and for purposes unrelated to any legitimate law enforcement function.

2. Defendant James Stewart repeatedly accessed Plaintiff's personal information through restricted law-enforcement databases and systems, including RMS/mobile systems, NCIC/TLETS-related systems and TLOxp (Transunion Company), in July 2021 and again in February 2024, without Plaintiff's consent and without any identified legitimate law-enforcement justification.

3. The City of Galveston's own criminal and internal investigations later confirmed that Defendant Stewart conducted improper searches involving Plaintiff through restricted law-enforcement systems for purposes unrelated to any documented law-enforcement function and, upon information and belief, improperly represented or classified Plaintiff as being "under investigation" in order to obtain access to Plaintiff's protected personal information despite Plaintiff not being the subject of any criminal investigation, active law-enforcement inquiry, or legitimate governmental purpose.

4. The investigation further identified unauthorized searches involving multiple additional individuals, including current and past Galveston Police Department officers, officers' spouses, persons personally connected to Stewart, and other known individuals, reflecting a broader pattern of misuse and deficient oversight.

5. The repeated unauthorized access to Plaintiff's information was neither isolated nor unforeseeable, but instead occurred over multiple years within a system lacking adequate safeguards, supervision, auditing, monitoring, and accountability mechanisms reasonably designed to prevent or timely detect misuse of sensitive law-enforcement databases.

6. This action seeks declaratory, injunctive, equitable, compensatory, and punitive damages, together with attorney's fees, expert witness fees, taxable cost of court, pre-judgment and post- judgment interest, and all other relief to which Plaintiff may be entitled.

7. Plaintiff seeks compensatory damages in an amount to be determined at trial.

8. Plaintiff seeks relief under 42 U.S.C. § 1983 for violations of the Fourth Amendment, municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and relief under the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721 –2725, to the extent protected motor-vehicle-record information was accessed, used, or disclosed.

## II.
## JURISDICTION AND VENUE

9. This court has original jurisdiction under 28 U.S.C. §1331 and § 1343, because this action arises under the Constitution and the laws of the United States, including 42 U.S.C. § 1983 and the Drivers Privacy Protection Act, 18 U.S.C. §§ 2721-2725.

10. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over any state-law claims by Plaintiff that may later be asserted.

11. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the events and omissions giving rise to these actions that occurred in Galveston County, Texas.

## III.
## PARTIES

12. Plaintiff Michelle L. Garcia, a resident of Galveston, County, Texas.

13. Defendant City of Galveston, Texas, is a municipal corporation organized under the laws of the State of Texas. This defendant may be served through its City Secretary, Janelle Williams at 823 Rosenberg, Galveston, TX 77550 or other authorized agent.

14. Defendant James Stewart, at all relevant times, was a sworn law enforcement officer employed by the City of Galveston Police Department and is sued in his individual capacity. This defendant can be served at 2501 Wagtail Way Ln, League City, Texas 77573; or any other address where he may be found.

15. Defendant Doug Balli, at all relevant times, is a sworn law-enforcement officer serving as Chief of Police of the City of Galveston, Texas. At all times hereinafter, mentioned Defendant Chief Balli is sued in his official capacity only as a policymaker responsible for supervision, training, and enforcement of departmental policies. This defendant may be served by serving its City Secretary, Janelle Williams, at 823 Rosenberg, Galveston, TX 77550; or any other address where she may be found.

**IV.**
**FACTS**

**A. Stewart's Repeated Unauthorized Searches of Michelle Garcia**

16. In July 2021, Stewart repeatedly searched Plaintiff's personal information through Galveston Police Department mobile records systems and related law-enforcement databases.

17. The access logs reflect that Stewart conducted at least sixteen (16) unauthorized mobile name searches involving "Garcia, Michelle Lynn" and "Garcia-Ramirez, Michelle Lynn" during July 2021, including searches occurring on July 5, July 6 (two searches), July 9 (four searches), July 10 (two searches), July 11 (two searches), July 14 (three searches), July 19, and July 23, 2021, together with related access activity during the same period.

18. On February 6, 2024, Stewart again used restricted investigative systems, including TLO, to search Plaintiff on two (2) additional occasions and to search individuals associated with Plaintiff, bringing the total known unauthorized searches involving Plaintiff to at least eighteen (18) occasions.

19. Upon information and belief, none of those searches were connected to any legitimate criminal investigation, warrant, emergency response, crash report, call-for-service, no documented arrest, court order, traffic matter, or other lawful law-enforcement purpose.

20. Plaintiff did not consent to any of the searches.

21. Plaintiff was not notified at the time the searches occurred.

**B.  The City's Internal Investigation Confirmed Misuse of Protected Systems**

22. On or about March 6, 2024, the Galveston Police Department initiated an internal criminal investigation into Defendant Stewart's suspected misuse of TLO (a TransUnion investigative database), RMS, and other restricted law-enforcement systems after identifying billing anomalies and suspicious access patterns.

23. On or about March 19, 2024, Defendant Stewart had been placed on administrative leave in connection with the investigation into misuse of restricted law-enforcement systems, reflecting the seriousness of the suspected misconduct and the City's early notice of potential unauthorized access to protected personal information.

24. By May 2024, the City had identified billing anomalies, repeated unauthorized searches involving current and former officers, officers' spouses, Plaintiff, and other individuals who were not the subject of any legitimate law-enforcement investigation or documented governmental purpose.

25. The City's internal investigation materials reflect that Stewart's searches were under review for offenses including misuse of official information, unauthorized

obtaining/use/disclosure of criminal history, abuse of official capacity, official oppression, and breach of computer security.

26. The City's own policy concerning protected information expressly prohibited access for personal reasons or other than a legitimate work-related purpose and assigned responsibility to the Chief of Police for compliance, training, auditing, and security.

27.The City's investigation confirmed that Stewart used TLO (Transunion Company), RMS (Report Management System), NCIC (National Crime Information Center)/TLETS (Texas Law Enforcement Telecommunications Center)-related tools, and related systems to search Plaintiff and other persons without a legitimate work-related purpose.

28. The investigation also identified comparable database misuse by other officers which included additional unauthorized searches involving current and former officers, officers' spouses, and other persons, demonstrating that the misuse was not limited to Plaintiff and showing that the problem was not isolated to one rogue officer.

29. The City's investigation further revealed that similar database misuse had occurred involving other officers, including Jeremi Smart, showing a broader pattern of inadequate oversight and enforcement.

30. The investigation also identified unauthorized searches involving public officials and legal professionals, including a former sitting judge and a former assistant district attorney from the Galveston District Attorney's Office, further demonstrating a broader pattern of misuse and deficient oversight.

31. On July 23, 2024, Chief Doug Balli issued a written statement indefinitely suspending Stewart for, among other things, incompetence, lack of good moral character, and policy violations involving unauthorized access and use of protected information.

32. The City's investigation materials were presented to municipal and prosecutorial officials, including the Galveston County District Attorney's Office and Assistant District Attorney Barbara Agbu, placing the City on actual notice of the widespread misconduct.

### C. Plaintiff First Learned of the Misconduct in 2024

33. Plaintiff first became aware of Defendant Stewart's repeated unauthorized access to her personal information on or about June 4, 2024, when she was contacted by Internal Affairs Investigator Marcus Morrison regarding an ongoing Galveston Police Department investigation into Stewart's misuse of restricted law-enforcement databases.

34. Prior to June 4, 2024, Plaintiff had no knowledge, reason to suspect, or reasonable means of discovering that Defendant Stewart had repeatedly accessed her confidential information through restricted law-enforcement systems in July 2021 or February 2024.

35. Plaintiff could not reasonably have discovered the misconduct earlier because the searches occurred through confidential law-enforcement systems inaccessible to Plaintiff, were not disclosed to Plaintiff, and remained exclusively within Defendants' possession and control until Plaintiff was contacted during the investigation.

36. Plaintiff thereafter learned that Defendant Stewart had repeatedly searched her information over multiple dates and years without authorization, consent, or any legitimate law-enforcement purpose.

37. Upon information and belief, Plaintiff did not receive complete information concerning the scope of the searches during her June 4, 2024 interview with Internal Affairs Investigator Marcus Morrison. Additional records containing material facts were later produced through Texas Public Information Act requests on April 1, 2026, which Plaintiff could not have known or discovered earlier through reasonable diligence.

### D. DAMAGES

38. Defendant Stewart's repeated unauthorized access to Plaintiff's personal information invaded Plaintiff's privacy and caused substantial emotional distress, fear, anxiety, humiliation, emotional anguish, and ongoing uncertainty regarding the extent, use, retention, dissemination, and potential misuse of her private information.

39. Plaintiff experienced significant fear and loss of personal security after learning the extent of Defendant Stewart's access to sensitive personal information and the nature of information available through TLO and related law-enforcement databases, including addresses, relatives, vehicle information, associates, and personal identifying information.

40. Plaintiff experienced continuing uncertainty and distress arising from not knowing what information Defendant Stewart accessed, how often it was viewed, whether information was retained, shared, downloaded, copied, disseminated, or used for improper purposes, or whether additional unauthorized access occurred beyond what was disclosed.

41. After learning of Defendant Stewart's repeated unauthorized access and later learning information concerning Defendant Stewart's prior conduct toward other women identified in the investigation, Plaintiff developed increased fear for her personal safety and the safety of her family.

42. Plaintiff experienced increased anxiety, hypervigilance, emotional distress, fear of being alone, disruption to her sense of safety, and changes to her normal daily activities and routines.

43. Plaintiff became increasingly fearful of going places alone and experienced ongoing concern regarding her personal whereabouts, safety, and vulnerability because Defendant Stewart possessed access to detailed personal information regarding Plaintiff and her family.

44. Plaintiff took additional precautions to increase her sense of personal security, including obtaining a dog in or around July 2024 and increasing personal security measures at her residence.

45. As a direct and proximate result of Defendants' conduct, Plaintiff sought professional mental-health treatment, including therapy, counseling, psychiatric care, medication management, and ongoing treatment to address symptoms associated with anxiety, emotional distress, focus, sleep disruption, and related symptoms.

46. Plaintiff incurred medical expenses for mental-health treatment and continues to experience emotional distress, anxiety, mental anguish, fear, disruption to daily life, invasion of privacy, and related damages that are expected to continue in the future.

47. As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered injuries and damages for which she now seeks relief.

## V.
## <u>FIRST CLAIM FOR RELIEF</u>

**(42 U.S.C. § 1983 - Fourth Amendment Violation Against Defendant James Stewart.)**

48.  Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

49. Plaintiff had a constitutionally protected privacy interest in the private identifying information accessed by Defendant Stewart.

50. At all relevant times, Defendant Stewart acted under color of state law.

51. By virtue of his position as a Galveston Police Department officer, Stewart had access to restricted law-enforcement databases and records, including private personal information concerning Plaintiff.

52. Stewart used that official access to repeatedly search Plaintiff's personal information on multiple occasions in July of 2021 and February of 2024 without a warrant, probable cause, consent, lawful justification, or any legitimate law-enforcement purpose.

53. Stewart's repeated unauthorized searches constituted an unreasonable search and seizure, and an unlawful governmental intrusion into Plaintiff's private information, in violation of the Fourth Amendment.

54. Defendant Stewart's conduct was intentional, knowing, and outside the scope of any legitimate police purpose, which violated Plaintiff's rights under the Fourth Amendment to the United States Constitution and is actionable under 42 U.S.C. § 1983.

55. Stewart is liable to Plaintiff for damages under 42 U.S.C. § 1983.

## SECOND CLAIM FOR RELIEF
**(U.S.C. § 1983 Municipal Liability (Monell) Against Defendant City of Galveston)**

56. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

57. The City of Galveston is a "person" subject to suit under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978)

58. The constitutional violations alleged above were caused by an official municipal policy, longstanding custom, or deliberate indifference by final policy makers of the City of Galveston including but not limited to:

    a.   failure to train officers on lawful use of restricted databases;

    b.   failure to audit and monitor database access;

    c.   failure to discipline or meaningfully correct known misuse;

d.  failure to enforce existing protected-information policies;

e.  ratification of misconduct after actual notice; and

f.  a pattern of similar misuse by other officers demonstrating a de facto custom.

59. More specifically, the City, through its policymakers and supervisory personnel, failed to adequately train, supervise, audit, and discipline officers with access to restricted law-enforcement databases, including NCIC, TLETS, RMS, P2P, and TLO.

60. The City of Galveston maintained policies, customs, practices, failures in supervision, inadequate monitoring systems, and/or deliberate indifference that allowed officers to misuse restricted databases without timely detection or intervention.

61. The City had actual notice of database abuse, including Stewart's misconduct, and yet failed to implement safeguards reasonably calculated to prevent unauthorized searches.

62. The City also failed to enforce existing protected-information policies and safeguards designed to prevent unauthorized access to private identifying information.

63. The City had actual notice that Sergeant Stewart had misused restricted databases, and the City's own internal investigation confirmed repeated unauthorized searches of Plaintiff and other persons without a legitimate law-enforcement purpose.

64. Despite prior disciplinary concerns involving Defendant Stewart, the City failed to implement reasonable safeguards, monitoring, auditing, or access restrictions sufficient to prevent repeated unauthorized database access.

65. The City's response to that misconduct was inadequate and amounted to ratification and deliberate indifference to the risk of further violations.

66. The City knew or should have known that officers with unrestricted access to RMS, TLO, NCIC, and related systems posed a foreseeable risk of misuse absent adequate safeguards, auditing, supervision, and accountability measures.

67. The misconduct alleged herein was foreseeable by the city the City, and it's failures were the moving force behind Plaintiff's injuries.

68. The City's own investigation determined that unauthorized searches occurred and were only discovered following billing anomalies and subsequent targeted review.

69. Plaintiff is entitled to recover damages and to such declaratory or injunctive relief as the Court deems just and proper.

## THIRD CLAIM FOR RELIEF
### (Driver's Privacy Protection Act 18 U.S.C. §§ 2721–2725)

70. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

71. On information and belief, Stewart accessed or used information derived from Plaintiff's motor vehicle records or from a database containing protected motor-vehicle-record information.

72. The DPPA prohibits knowingly obtaining, using, or disclosing personal information from motor vehicle records for a purpose not permitted by statute.

73. To the extent Stewart accessed or used Plaintiff's protected motor-vehicle-record information for personal curiosity, harassment, or any other impermissible purpose, he violated the DPPA.

74. Plaintiff is entitled to recover all remedies available under 18 U.S.C. § 2724, including actual damages, liquidated damages where applicable, punitive damages as permitted by law, and reasonable attorney's fees and costs.

## VI.
## DISCOVERY RULE, ACCRUAL, AND TOLLING

75. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

76. Plaintiff first discovered the unauthorized searches on or about June 4, 2024 when Defendants disclosed the misconduct during the City's Internal Affairs investigation.

77. The 2021 searches were concealed within restricted law-enforcement systems controlled exclusively by Defendants and were not discoverable by Plaintiff through reasonable diligence before disclosure.

78. Defendants' control of the records, delayed disclosure, and concealment of the scope of the searches equitably toll any limitations defense.

79. To the extent needed, Plaintiff pleads the discovery rule, fraudulent concealment, and equitably tolls any limitations defense.

## VII.
## ATTORNEY'S FEES

80. Plaintiff seeks recovery of reasonable attorney's fees, expert witness fees, litigation expenses, and costs to the fullest extent permitted by law, including but not limited to 42 U.S.C. § 1988, the Driver's Privacy Protection Act, 18 U.S.C. § 2724(b), and any other applicable statutory or equitable basis.

## VIII.
## JURY DEMAND

81. Plaintiff makes a formal demand for a jury trial in this matter.

## IX.
## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Michelle L. Garcia respectfully requests that Defendants be cited to appear and answer, and that upon final trial Plaintiff have judgment against Defendants, jointly and severally where legally permitted, and award plaintiff the following relief:

a. A declaration pursuant to 28 U.S.C. § 2201 that Defendants violated Plaintiff's rights under the United States Constitution and federal law;

b. Compensatory damages in an amount to be determined at trial, but not less than $75,000, including damages for emotional distress, mental anguish, invasion of privacy, loss of personal security, medical expenses, emotional suffering, and all other injuries proximately caused by Defendants' conduct;

c. Punitive damages against Defendant James Stewart in his individual capacity to the fullest extent permitted by law;

d. Actual damages, liquidated damages, punitive damages, attorney's fees, litigation expenses, and costs authorized under the Driver's Privacy Protection Act, 18 U.S.C. § 2724;

e. Pre-judgment and post-judgment interest as permitted by law;

f. Costs of court;

g. Reasonable attorney's fees, expert witness fees, and litigation expenses as permitted by law, including but not limited to recovery under 42 U.S.C. § 1988, the Driver's Privacy Protection Act, and any other applicable basis; and

h.  Such other and further relief, at law or in equity, to which Plaintiff may show herself

justly entitled.

Respectfully submitted,

PJL LAW, P.L.L.C

Paige J. Lockett
Texas State Bar Number: 24072213
Southern District (TX) Federal Bar No.: 3371600
4801 Woodway, Suite 300E-37
Houston, Texas 77056
Telephone: (832) 837-9707
Facsimile: (713) 581-6528
Email: Paige@pjllawfirm.com
*Attorney for Michelle L. Garcia*